# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**UNITED STATES OF AMERICA**,

    Plaintiff,

vs.                                                            Cr. No. 09-621 MCA

**GUADALUPE LAUREN**
**CARDENAS-ROMERO,**

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial* [Doc. 48], filed October 26, 2009 and *Defendant's Motion in Limine to Exclude Government's Exhibits* [Doc. 58], filed October 28, 2009. The Court heard arguments, proffers from counsel, and witness testimony at the Call of the Calendar on October 29 and 30, 2009. Having reviewed the parties' submissions, the arguments and proffers of counsel, the relevant law, and being fully advised in the premises, the Court grants in part and denies in part the *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial*, and defers a ruling on *Defendant's Motion in Limine to Exclude Government's Exhibits.*

### I. BACKGROUND

On March 11, 2009, the Grand Jury returned an *Indictment* charging Defendant Guadalupe Lauren Cardenas-Romero with one count of possession with intent to distribute

5 kilograms and more of a mixture and substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). [Doc. 11]. The cocaine in question was discovered during a port-of-entry search conducted on a tractor trailer that Defendant was driving.

On October 23, 2009, Defendant filed his *Notice of Defendant's Expert Witnesses*, in which he gave notice that he planned to call Paul L. Scauzillo and Vardis Gaus to testify as to the field of narcotics interdiction (Mr. Scauzillo) and practices in the commercial trucking industry (Ms. Gaus) . [Doc. 47].[1] On October 26, 2009, the Government filed a motion for a *Daubert* hearing and to exclude both Mr. Scauzillo and Ms. Gaus from offering expert testimony at trial on the ground that neither the reasoning nor the methodology underlying the proposed expert testimony from these witnesses is scientifically valid, nor can the reasoning or methodology properly be applied to the facts of this case. [Doc. 48 at 2].

---

[1] On June 30, 2009, the Government filed the *United States' Notice to Offer Expert Testimony* [Doc. 34], which did not draw a motion in limine from Defendant. Through its *Notice*, the Government has proffered as experts Forensic Chemist P. Steven Kusko and Special Agent Christopher Godier. [See id.]. Mr. Kusko will testify as to the results of chemical tests he performed on the seized cocaine. At the Call of the Calendar, counsel for Defendant raised no objection (assuming the proper foundation is laid and Mr. Kusko qualifies as an expert by knowledge, skill, education, training, and experience) to Mr. Kusko's proposed expert testimony.

SA Godier has been offered to testify as to the following issues (1) the monetary value of the seized cocaine; (2) what would be considered a distributable amount of cocaine, as opposed to a personal-use amount; and (3) the duties of different individuals in a drug trafficking scheme. [Doc. 34 at 2]. At the Call of the Calendar, the only objection that counsel for Defendant raised with respect to SA Godier's testimony (assuming the proper foundation is laid and SA Godier qualifies as an expert by knowledge, skill, education, training, and experience) is to the relevance of testimony concerning the duties of different individuals in a drug trafficking scheme. The Court addresses this objection below in Section II.C.2.

On October 28, 2009, Defendant filed *Defendant's Motion in Limine to Exclude Government Exhibits* [Doc. 58]. Through this motion, Defendant seeks to prevent the use at trial of Government's Exhibit 26. Exhibit 26 is a collection of a number of photographs depicting the inside and the outside of the trailer portion of the tractor trailer in which the cocaine in this case was discovered. Defendant moves to exclude this exhibit pursuant to Rules 401, 403, and 701 of the Federal Rules of Evidence. [See generally id.].

## II. ANALYSIS

### A. *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial* [Doc. 48]

Fed. R. Evid. 702 imposes a special gatekeeping obligation on this Court to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999); Daubert v. Merrell-Dow Pharm., Inc., 509 U.S. 579, 592-93 (1993). The relevance of such testimony also must be weighed against "the danger of unfair prejudice, confusion of the issues, or misleading the jury" as well as "considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. While the Court is not required to consider any particular set of factors or utilize a particular procedure in making such determinations with respect to expert testimony, the Court must make *some* kind of determination on the record in order to demonstrate that it has performed its gatekeeping function. See Unit ed States v. Velarde, 214 F.3d 1204, 1209 (10th Cir. 2000); Goebel v. Denver and Rio Grande Western R. Co., 346 F.3d 987, 991-92 (10th Cir. 2003). "'Rule 702 thus dictates a common-sense

3

inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject.'" United States v. Muldrow, 19 F.3d 1332, 1338 (10th Cir. 1994).

The purpose of Section II.A. of this *Memorandum Opinion and Order*, and the hearing that preceded it, is to fulfill the Court's gatekeeping function. The parties should keep in mind, however, that the preliminary rulings stated herein are subject to reconsideration in the event that unforeseen events or a change in context should occur during the trial. For this reason, the parties are directed to notify the Court outside the presence of the jury before eliciting expert testimony on disputed topics, so that the opposing party has a fair opportunity to renew an objection and the Court may issue a timely ruling on such renewed objections.

Finally, it should be noted that the proponent of expert testimony bears the burden of showing that its proffered expert's testimony is admissible. United States v. Nacchio, 555 F.3d 1234, 1241 (10th Cir. 2009).

### 1. Paul L. Scauzillo

At the *Daubert* hearing/Call of the Calendar held October 29 and 30, 2009, counsel for Defendant represented that he intends to call Paul L. Scauzillo to testify with respect to the following issues: (1) whether, in his experience, drug traffickers place drugs for transport with commercial carriers in which the truck driver is unaware that he is transporting drugs; (2) the commonality of this practice; and (3) whether he is aware of instances in which controlled substances are shipped by commercial transport to legitimate businesses. The first

step in fulfilling the Court's gatekeeping function is determining whether Mr. Scauzillo is qualified by knowledge, skill, experience, training, or education to render the proffered opinions. See Nacchio, 555 F.3d at 1241.

Paul Scauzillo currently is an active reserve deputy with the Los Angeles County Sheriff's Department (LACSD). He has been with the LACSD since 1977, serving in a variety of capacities. From 1977 until 1985, he served as a deputy sergeant. At the *Daubert* hearing, however, Mr. Scauzillo testified that during his time as a deputy sergeant, he made no drug seizures from tractor trailers.

From 1985 until 2005, Mr. Scauzillo served as a sergeant, working in the following three divisions: (1) patrol (1985 to 1989); (2) fugitive detail (1989 to 1991); and (3) sheriff's narcotics bureau (1991 to 2006).  At the *Daubert* hearing, Mr. Scauzillo testified that in his years with patrol and fugitive detail, he made no drug seizures from tractor trailers.

Mr. Scauzillo also testified, however, that while he worked narcotics interdiction with the sheriff's narcotics bureau, he supervised "various narcotics crews." He testified to his involvement during this time with "300 search warrants," as well as the seizures of "thousands of pounds of narcotic—of cocaine, a couple mil in cash" and one thousand pounds of marijuana. He testified to the hundreds of arrest his "crews" made, and to having filed cases involving the possession, sales, and transportation of narcotics.

During his time in drug interdiction with the sheriff's narcotics bureau, Mr. Scauzillo also seized drugs from what he described as "major shipments." However, as he explained,

5

these "major shipments of narcotics" were mostly discovered in houses and, to the extent they involved vehicles, involved "personal vehicles, small commercial vehicles, . . . pick up trucks [and] conversion vans." Although he "remember[ed] searching trucks[,]" he did not elaborate on this point during hie Daubert hearing.

Between 2000 and 2006, Mr. Scauzillo worked with what he described as "an unofficial task force" at the Los Angeles Airport (LAX). Mr. Scauzillo testified that, during this time, he investigated cases involving shipments of money into—and shipments of narcotics out of—LAX. He testified that 75% of this time was spent at LAX, and that the remaining 25% was spent profiling packages at UPS and Federal Express (FedEx) terminals, as well as other "cargo facilities." According to Mr. Scauzillo, it is "common knowledge that money and drugs are shipped through FedEx and UPS on a daily basis, thousands of packages a day."

When asked about his task-force experience with tractor trailers specifically, Mr. Scauzillo testified to having investigated "maybe five, five or six" tractor trailers total, of which only three were non-FedEx or UPS trucks. Mr. Scauzillo admitted that his experience with other common carriers is extremely limited. He also testified that he has never driven a tractor trailer, nor does he have any experience in the tractor trailer industry.

The Advisory Notes to Rule 702 of the Federal Rules of Evidence provide that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for

the opinion, and how that experience is reliably applied to the facts." Fed.R.Evid. 702 advisory committee's note. Returning to the three opinions for which Mr. Scauzillo has been proffered as an expert, I find the following.

First, I find that Mr. Scauzillo's knowledge, skill, education, training, and experience do not qualify him to provide an expert opinion as to whether drug traffickers tend to place drugs for transport with long haul commercial carriers (such is at issue in this case), and as opposed to the FedEx/UPS delivery services, of which he is familiar, and in which the truck driver is unaware that he is transporting drugs. I make this finding on the basis of Mr. Scauzillo's admitted limited experience with long haul common carriers, as opposed to such global transportation delivery services as FedEx and UPS. I find that counsel for Defendant did not lay a foundation for the Court to generalize between Mr. Scauzillo's experience with FedEx/UPS carriers and long haul commercial carriers which is the subject of this case. I also note that of the five or six tractor trailers Mr. Scauzillo testified to having investigated, only three were non-FedEx or UPS trucks. Because I find that Mr. Scauzillo is not qualified to offer expert testimony as to whether drug traffickers tend to place drugs for shipment with common carriers whose truck driver is unaware he is transporting drugs, I necessarily also find that Mr. Scauzillo is not qualified to offer expert testimony as to whether such conduct is common practice. Additionally, even if he were qualified to testify as to the commonality of the practice, I find that the small number (three) of Mr. Scauzillo's non-FedEx or UPS tractor trailer investigations is insufficient to render reliable any opinion he may offer as to whether it is common practice for drug traffickers to place drugs for transport with

commercial carriers where the drive is unaware that he is transporting drugs. Although Mr. Scauzillo certainly possesses experience in the field of drug interdiction as a whole, he has not demonstrated how his experience in this broad field provides a sufficient basis for the opinions proffered, or how that experience is reliably applied to the facts of this case. See Fed.R.Evid. 702 advisory committee's note. For these reasons, I find that Mr. Scauzillo does not qualify by knowledge, skill, education, training, and experience as an expert on the issues of whether drug traffickers tend to place drugs for shipment with common carriers whose truck driver is unaware he is transporting drugs, and, if so, whether this is a common practice.

With regard to the third opinion for which Mr. Scauzillo has been offered—his knowledge of instances in which controlled substances are shipped by commercial transport to legitimate businesses—I find that Defendant has failed to articulate how this proffered testimony is relevant to any issue in this case, where the sole question for the jury will be whether Defendant is or is not guilty of the offense of possession with intent to distribute cocaine. Evidence, in general, that is not relevant is not admissible, see Fed.R.Evid. 402, and expert opinion evidence that is not relevant is not admissible because it will not assist the trier of fact, see Fed.R.Evid. 702. Thus, assuming without deciding that Mr. Scauzillo might qualify by knowledge, skill, and experience as an expert on the issue of controlled substances sometimes being shipped by commercial transport to legitimate businesses,[2] I nevertheless

---

[2] At the *Daubert* hearing, Mr. Scauzillo testified to "hav[ing] experience" as a member of the LAX task force in conducting investigations involving the shipment of drugs to businesses where "[m]any times the owners of the business did not know what was going on because their

find that such testimony is not relevant to the issue presented in the instant case, *to wit*, whether Defendant is or is not guilty of the possession with intent to distribute cocaine. Defendant has failed to proffer any evidence supporting or establishing the basis for such opinion testimony. For these reasons, I find that Mr. Scauzillo may not testify as an expert on the three issues for which he has been proffered. See United States v. Rodriguez-Felix, 450 F.3d 1117, 1122-23 (10th Cir. 2006) ("Under Rule 702, a district court must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony.").

## 2. Vardis Gaus

Defendant also has proffered Vardis Gaus to render expert testimony on practices in the commercial trucking industry. Specifically, Ms. Gaus has been offered to render her opinions that (1) the use of bolt seals as opposed to other types of seals is more or less arbitrary in most cases; (2) it is not unusual for truckers to alter their log books to reflect rest time to allow them to drive more hours; and (3) the damage to the tractor trailer in this case, and as shown in the Government's photographic evidence, is ordinary damage from routine use. [Doc. 47 at 1].

---

employees would be using their business to further their narcotic transaction." The extent of Mr. Scauzillo's experience in this area was not further explored during the hearing. See Ralston v. Smith & Nephew Richards, Inc., 275 F.3d 965, 970 n.4 (10th Cir. 2001) (as the party offering Mr. Scauzillo as an expert, Defendant bears the burden of demonstrating that Mr. Scauzillo is qualified to render the proffered expert opinion).

Vardis Gaus currently serves as the Program Chair for the truck-driving program at Central New Mexico Community College (CNM). She has held this position since October 2007, and has been with CNM as an Instructor in the program since August 2002. As Program Chair, Ms. Gaus' duties include directing the commercial driver's license testing and truck-driving program, and supervising and directing the faculty for the truck driving program. [Doc. 47; Exh. A at 1]. Ms. Gaus also serves as an Instructor in CNM's truck-driving program, and has so served since August 2002. Ms. Gaus' duties as Instructor involve both classroom and field instruction. Among other topics, Ms. Gaus teaches the Federal Motor Carriers Safety Regulations; vehicle inspection, maintenance, and operations; map reading; logs; and accident procedure. [Doc. 47; Exh. A at 1].

Prior to joining CNM, Ms. Gaus worked as a truck driver for Burlington Motor Carriers (1995 to 1996), M.S.Carriers (1996 to 1997), G&C Trucking (1997 to 1998), and Davis Cartage Company (1998 to 2002). As a driver, Ms Gaus performed trip planning and vehicle inspection, maintained federally mandated documentation, and complied with the Federal Motor Carriers Safety Regulations. During part of this time (1998 to 2002), Ms. Gaus also worked as an Instructor in the truck-driving program of the Baker College Truck Driving School, performing the same duties she now performs as a CNM Instructor. [Doc. 47; Exh. A at 2].

In addition to her experience in the trucking industry, Ms. Gaus has served as as Adjunct Instructor of Mathematics at the ITT Technical Institute, in Albuquerque, New

Mexico. Ms. Gaus held this position from June 2005 until September 2006. [Doc. 47; Exh. A at 5.

At the *Daubert* hearing, Ms. Gaus was asked specifically to elaborate on her experience in the three areas for which she has been proffered as an expert. With respect to the first area (the use of bolt seals as opposed to other types of seals), Ms. Gaus provided detailed testimony as to who typically will seal a trailer, and in what manner. She explained that, in her experience, she generally would be present when a security guard would seal the back of a trailer. She explained that some of the types of seals that are used are padlocks, metal strips, plastic strips, cable locks, and electronic seals. She also explained that in many cases it is the shipper who decides what type of seal to use, and that there is "not always" a thought process with respect to which seal will be used.

Having considered Ms. Gaus' testimony, I am satisfied that she qualifies by knowledge, skill, education, training, and experience to provide an expert opinion as to the types of security devices commonly used to secure tractor trailer loads. I find that the basis for the opinion that she is being asked to provide is reliable, and that her opinion is relevant and likely to assist the jury in understanding why a certain seal may be used to secure a tractor trailer load. I also note that the Government raised no objection to Ms. Gaus' testimony on this issue.

With respect to the second issue for which she has been proffered as an expert—that it is not unusual for truckers to alter their log books to reflect rest time to allow them to drive more hours—I find that Ms. Gaus qualifies by knowledge, skill, education, training, and

11

experience to provide expert opinions as to the significance of the function of log books, and categories of required data. She uses her knowledge in the field of mathematics to calculate the accuracy of the numbers in a log book, considering legal speed limit, number of miles driven, and number of driving hours reported. Ms. Gaus testified that she has audited log books, both written and electronic, in various capacities (safety manager, instructor) from 1998 until the present. Although the bulk of her log-book auditing experience comes from her work with students (whom Ms. Gaus explained do not intentionally alter log books but, rather, simply make errors) she also testified to having audited at least 23 log books of non-student drivers who *did* intentionally falsify data and who were reprimanded as a result. Further, she testified to having been retained in 2008 by an attorney for the express purpose of interpreting log-book data to determine whether it had been falsified by the driver.

I find that Ms. Gaus' opinion as to the function of log books and the categorical information therein is both relevant and reliable and likely to assist the jury in understanding an area of the commercial trucking industry with which a layperson might not be familiar. However, Ms. Gaus, who has not examined Defendant's log books, will not be permitted to interpret Defendant's log books or to testify as to the reasons he may have made particular entries. I find that such testimony, which would be testimony as to Defendant's state of mind, would infringe on the exclusive province of the jury to decide questions of fact.

Finally, with respect to the third issue for which Ms. Gaus has been offered as an expert—that the damage to the tractor trailer in this case and as shown in the Government's photographic evidence is ordinary damage from routine use—I find that Ms. Gaus qualifies

by knowledge, skill, education, training, and experience to provide an expert opinion as to various possible causes of damage to a tractor trailer.  At the *Daubert* hearing, she testified as to her experience as safety manager at Davis Cartage in examining damage to different parts of tractors or trailers to determine both cause and age of the damage.  She also testified to the methodology she employed in physically examining such damage, which methodology involved studying any previous damage reports as to the particular tractor or trailer, then physically inspecting the tractor trailer for signs of, for example, fresh paint or additional marks around the damage site that might explain how the damage occurred.  Ms. Gaus also attended a class on accident investigation (through the North American Transportation Management Institute) and continues at the present time to examine damage to tractors and trailers in her position as Program Chair in CNM's truck-driving program.  Thus, I find that Ms. Gaus is qualified to render an expert opinion on possible types or causes of damage to tractors and trailers during use, and also that her testimony on this topic is relevant and reliable and likely to assist the jury.

The Government objects to Ms. Gaus offering her expert opinion that damage done to the door bolt or hinge in this case resulted from ordinary use of the trailer and could not have been inflicted any other way.  The Government's theory is that a door bolt was broken with a hammer, the door was removed, and the cocaine was loaded into the trailer in that manner. Noting Ms. Gaus' lack of experience with trailer doors being removed this way, the Government argues that Ms. Gaus should not be permitted to opine that ordinary use caused the damage, since "the foundation for that opinion is lacking for the fact that the damage can

13

happen another way, by having the bolt taken off the hinge. . . ."

I find that the Government's objection is one going to the weight of Ms. Gaus' testimony, and not its admissibility. Ms. Gaus is being offered to rebut the Government's evidence that the signs of damage to the doors and door areas of the trailer were caused, not by accident or ordinary wear and tear, but rather by the deliberate act of removal of the doors. Again, Ms. Gaus qualifies by knowledge, skill, education, training, and experience to provide an expert opinion as to various possible causes of damage to a tractor trailer. She may therefore offer her opinion as to what caused the damage to the tractor trailer in this case, to rebut the Government's evidence. The government will have an opportunity to cross-examine Ms. Gaus. Therefore, to the extent the government's photographic exhibits regarding damage to the trailer are admitted (Government Exhibit 26), Ms. Gaus will be permitted to offer testimony in this regard.

Accordingly, for the reasons explained above, the *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial* will be granted in part and denied in part.

### B. *Defendant's Motion in Limine to Exclude Government's Exhibits* [Doc. 58]

Through this motion, Defendant seeks to prevent the Government from introducing what the Government has tendered as Exhibit 26, a collection of photographs (26A-26CC) of Defendant's tractor trailer, purporting to show damage done to the vehicle. Defendant argues that (1) photographic evidence showing damage to the trailer at a remote time, and without any way of determining the age or the cause of the damage, is simply too remote

14

speculative and unreliable to have relevance and sufficient probative value (Rule 401); (2) because the jury would likely put far more weight on the damage to the trailer than the speculative and unreliable nature of the evidence would justify, any probative value of the photographs is substantially outweighed by the danger of unfair prejudice or the risk of misleading the jury (Rule 403); and (3) foundation for the evidence would require testimony that would amount to speculation and inadmissible opinion testimony by a lay witness (Rule 701). [Doc. 58 at 1-2].

At the Call of the Calendar, the Government represented that it will not offer Exhibits 26-I, 26-N, 26-R, 26-S, 26-T, 26-U, 26-V, 26-W, or 26-Y. The photographs that the Government intends to introduce (regarding damage) are Exhibits 26-D, 26-F, 26-G, 26-H, 26-J, 26-X, 26-Z, and 26-AA, all of which are proffered to show damage. Counsel for Defendant explained that he wishes to offer rebuttal opinion testimony relating to these photographs through Ms. Gaus. Exhibits 26-D, 26-F, 26-G, 26-H, 26-J, 26-X, 26-Z have not been preadmitted; instead counsel for the Government will need to make his formal tender and lay the proper foundation for their introduction at trial. Because a ruling on *Defendant's Motion in Limine to Exclude Government's Exhibits* must await the context of trial, I will defer my ruling on this motion.

### C. *United States' Notice to Offer Expert Testimony* [Doc. 34]

On June 30, 2009, the Government filed the *United States' Notice to Offer Expert Testimony*, in which it gave notice of its intention to call (1) Forensic Chemist P. Steven Kusko, who would testify as to the results of the chemical tests he performed on the cocaine

seized from Defendant's tractor trailer, and (2) Special Agent Christopher Godier, who would testify as to (a) the monetary value of the seized cocaine; (b) what would be considered a distributable amount of cocaine, as opposed to a personal-use amount; and (c) the duties of different individuals in a drug trafficking scheme. [Doc. 34 at 2].

### 1. Steven Kusko

At the Call of the Calendar, counsel for Defendant stated that, assuming the proper foundation is laid, counsel has no objection to Mr. Kusko offering the expert testimony described above. Again, Fed. R. Evid. 702 imposes upon this Court a special gatekeeping obligation to ensure that expert testimony is not admitted at trial unless it is both relevant and reliable. With respect to Mr. Kusko, the Court will conduct its gatekeeping function during the trial. Should Mr. Kusko qualify as an expert on the basis of knowledge, skill, education, training, and experience, he will be permitted to testify as an expert on the area described more fully above.

### 2. Christopher Godier

At the Call of the Calendar, counsel for Defendant stated that he has no objection (assuming the proper foundation is laid) to SA Godier testifying as to the monetary value of the seized cocaine and what would be considered a distributable amount of cocaine, as opposed to a personal-use amount. He does object, on relevance grounds, to SA Godier offering expert testimony as to the duties of different individuals in a drug trafficking scheme.

In determining whether to allow SA Godier to testify as to the duties of different individuals in a drug trafficking scheme, it should be noted that the sole charge against Defendant here is possession with intent to distribute cocaine. [See Doc. 11].  He has not been charged with conspiracy.  Persuasive authority instructs that "the admission of expert testimony about the structure of drug trafficking organizations violates Federal Rules of Evidence 401 and 403 'whe[n] the defendant is not charged with a conspiracy to import drugs or whe[n] such evidence is not otherwise probative of a matter properly before the court.'"  United States v. Pineda-Torres, 287 F.3d 860, 863 (9th Cir. 2002) (*quoting* United States v. Vallejo, 237 F.3d 1008, 1012 (9th Cir.2001), *amended by* 246 F.3d 1150 (9th Cir.2001)).  The rationale is that "an expert providing testimony about the structure of drug trafficking organizations attributes knowledge to the defendant by attempting to connect him to an international drug conspiracy and thus implies that the defendant participated in a large-scale operation." Id. at 865.  The government has proffered no direct evidence associating the defendant with a drug trafficking organization.  The proffered expert cannot use the "blueprint" structure of drug trafficking organizations as a means of making that association. However, "because '[c]riminal prosecutions cannot be blueprinted, but must be tailored to the charges and facts of each case in consideration of the individual rights of each defendant,' this method of imputing knowledge lacks any probative value and is impermissible." Id. (*quoting* Vallejo, 237 F.3d at 1017).

The reasoning of the Pineda-Torres is applicable here.  Accordingly, I find that, given the facts and circumstances of the instant case, SA Godier's proposed expert testimony

17

concerning the duties of different individuals in a drug trafficking scheme is both (1) irrelevant to Defendant's case; and (2) substantially more prejudicial than probative. For these reasons, SA Godier will not be permitted to offer his opinion on this subject.

### III. CONCLUSION

On the basis of the foregoing, the Court will grant in part and deny in part the *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial*, and defer its ruling on *Defendant's Motion in Limine to Exclude Government's Exhibits.* All pretrial evidentiary rulings made herein are subject to reconsideration in the event that unforeseen circumstances or a change in context should arise during the trial.

**IT IS, THEREFORE, ORDERED** that the *United States' Motion in Limine for Daubert Ruling to Prohibit Proposed Defense Expert Testimony at Trial* [Doc. 48] is **GRANTED IN PART and DENIED IN PART;**

**IT IS FURTHER ORDERED** that a ruling is **DEFERRED** on *Defendant's Motion in Limine to Exclude Government's Exhibits* [Doc. 58];

**IT IS FURTHER ORDERED** that the Court will perform its gatekeeping function with respect to the Government's proffered expert witnesses, Forensic Chemist P. Steven Kusko and Special Agent Christopher Godier, at trial;

**IT IS FURTHER ORDERED** that SA Godier will not be permitted to testify as to the duties of different individuals in a drug trafficking scheme.

**SO ORDERED** this 3rd day of November, 2009, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge